IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 07-1623 (RMC) |
| ) | |
| BRICKMEN STRUCTURES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MOTION FOR ENTRY OF DEFAULT JUDGMENT
AND INCORPORATED MEMORANDUM IN SUPPORT THEREOF**

Plaintiffs, by their attorneys, and in accordance with Federal Rule of Civil Procedure 55(b)(2), move this Court to enter a default judgment in favor of the Plaintiffs and against Defendant in the amount of $47,702.54 on the ground that default has been entered against Defendant for failure to answer the Complaint of Plaintiffs. This motion is supported by the Declarations of David F. Stupar, attached hereto as Exhibit A, and Ira R. Mitzner, attached hereto as Exhibit B. The certificate of the Clerk of this Court declaring Defendant in default is attached hereto as Exhibit C. A copy of the Complaint filed by Plaintiffs is attached hereto as Exhibit D.

## FACTS

Plaintiffs, John Flynn, et al., filed the Complaint in this case on September 13, 2007. On September 26, 2007, Brickmen Structures, Inc. ("Brickmen Structures") was served with the Summons and Complaint. Defendant has failed to file an Answer to the Complaint. On October 26, 2007, default was entered by the Clerk of this Court against Defendant, Brickmen Structures..

## ARGUMENT

Rule 55 of the Federal Rules of Civil Procedure provides that when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, the clerk shall enter the party's default and "the party entitled to a judgment by default shall apply to the court therefor." Defendant has failed to answer the Complaint, default has been entered by the Clerk, and Plaintiffs are entitled to judgment. Accordingly, Plaintiffs' motion for a default judgment should be granted. *See, e.g.*, *Trustees of the Local 306, United Ass'n. Health & Welfare Fund v. Am. Testing & Inspection, Inc.*, No-88-2274-OG, 1988 WL 134942, *1 (D. D.C. Nov. 30, 1988) (entering default judgment where "defendant has failed to respond at any step of these proceedings or otherwise enter an appearance"); *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 901 (11th Cir. 1990) (affirming entry of default judgment as "[n]either the text of the Federal Rules, nor judicial interpretation placed in the rules by the Federal Courts contemplate that a party may totally ignore pleadings and notices it receives").

DSMDB-2354357v01

## CONCLUSION

For the foregoing reasons, a default judgment in favor of Plaintiffs and against Defendant in the amount of $47,702.54 should be entered.

Date: _____Nov. 28._____, 2007          Respectfully submitted,

By _____

Ira R. Mitzner (D.C. Bar No. 184564)
DICKSTEIN SHAPIRO LLP
1825 Eye Street, N.W.
Washington, DC 20006
(202) 420-2234

Counsel for Plaintiffs

3

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHN FLYNN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BRICKMEN STRUCTURES, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 07-1623 (RMC)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF DAVID F. STUPAR IN SUPPORT
## OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

Pursuant to 28 U.S.C. § 1746, I, DAVID F. STUPAR, hereby declare as follows:

1.      I am the Executive Director of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund") and am also an authorized representative to effect collections on behalf of the International Masonry Institute ("IMI") as specified in the General Collection Procedures of the Central Collection Unit ("CCU") of the Bricklayers and Allied Craftworkers ("Collection Procedures" or "Procedures") (attached at Tab 1). I have personal knowledge of the facts stated herein and, if called to testify as a witness, I could and would competently testify as set forth below.

2.      The IPF is a multiemployer employee benefit plan subject to ERISA. The IPF is governed by an equal number of employer-appointed and union-appointed Trustees, pursuant to the Taft-Hartley Act. Benefits under the plan are funded by contributions from participating employers.

3.      The Fund provides pension and other benefits to employees who work in the construction industry under contracts negotiated between Bricklayer local unions and employers.

Pursuant to these contracts, the employers are obligated to make contributions to the Fund in order to fund the benefits provided to the beneficiaries. The Trustees of the Fund have a fiduciary duty under ERISA to collect delinquent employer contributions, and the Trustees can be held personally liable for their failure to do so. 29 U.S.C. §§ 1104, 1109, 1132(g)(2). The Fund is administered in the District of Columbia.

4.      The Trustees adopted the CCU Collection Procedures governing the collection of employer contributions and reports.

5.      Under these Procedures, contributions and reports are due on or before the 15th day of the month ("Due Date") following the month in which work is performed. Once contributions are delinquent, the Procedures authorize the assessment of interest at 15 percent per annum and an additional amount, the greater of 15 percent per annum or 20 percent of the delinquent contributions, in the form ·of an additional computation of interest or liquidated damages.

6.      I am personally familiar with the account of Brickmen Structures, Inc. ("Brickmen Structures" or "Defendant").

7.      Brickmen Structures, acting through its authorized agent or officer, signed a collective bargaining agreement ("Agreement") with the International Union of Bricklayers and Allied Craftsmen Local Union No. 3 Arizona/New Mexico/Texas ("Local 3 AZ/NM/TX"), which obligated Brickmen Structures to submit monthly reports and payments to the IPF and IMI on behalf of its covered employees pursuant to the foregoing Procedures.

8.      Brickmen Structures has performed work in the jurisdiction of Local 3 AZ/NM/TX, which is covered by the Agreement.

2354161.01

9.    An examination ("audit") of the books and records of Brickmen Structures performed by the independent accounting firm of Calibre CPA Group PLLC, revealed that Defendant failed to pay contributions to the IPF and IMI for work covered by the Agreement performed in Local 3 AZ/NM/TX during the months of August 2005 through December 2006.

10.    In addition, although Defendant submitted reports to the IPF and IMI for work performed pursuant to the Agreement in the jurisdiction of Local 3 AZ/NM/TX during the months of October 2006 through May 2007[1], Defendant failed to submit related contributions. The IPF has prepared a Recap of these hours reported but not paid, based on the reports submitted by Defendant.

11.    As provided for in ERISA Section 502(g)(2)(A), Defendant owes the IPF and IMI contributions in the amount of $21,612.27 for work performed during the time period August 2005 through December 2006, as determined by the audit.

12.    As further provided for in ERISA Section 502(g)(2)(B) and under the terms of the Collection Procedures, interest in the amount of $1,857.81 on delinquent contributions determined due by the audit, calculated at a rate of 15 percent per annum from the Due Date, is owed by Defendant.  Moreover, pursuant to ERISA Section 502(g)(2)(C)(ii) and the Collection Procedures, liquidated damages in the amount of $4,322.47, calculated at the rate of 20 percent have been assessed on such delinquent contributions due the IPF and IMI.

13.    As provided for in ERISA Section 502(g)(2)(A), Defendant owes the IPF and IMI contributions in the amount of $10,360.90 for work performed during the time period October 2006 through May 2007, as determined by the IPF Recap.

---

[1]    Although the time periods covered by the audit and the IPF Recap overlap somewhat, there is no duplication in the delinquent moneys claimed because the audit covers moneys neither reported nor paid to the IPF by Defendant, while the Recap covers hours reported by Defendant but not paid.

3

14.     As further provided for in ERISA Section 502(g)(2)(B) and under the terms of the Collection Procedures, interest in the amount of $1,126.85 on delinquent contributions determined due by the IPF Recap, calculated at a rate of 15 percent per annum from the Due Date, is owed by Defendant.  Moreover, pursuant to ERISA Section 502(g)(2)(C)(ii) and the Collection Procedures, liquidated damages in the amount of $2,072.24, calculated at the rate of 20 percent have been assessed on such delinquent contributions due the IPF and IMI.

15.     As of the date of this Declaration, despite due demand thereof, Defendant has failed to pay moneys due the IPF and IMI in connection with work performed pursuant to the Agreement during the months specified above.

16.     Thus, as provided for in ERISA Section 502(g)(2)(A) and the Collection Procedures, Defendant owes the IPF and IMI $31,973.17 in delinquent contributions as determined by the audit and IPF Recap.

17.     As provided for in ERISA Section 502(g)(2)(B) and the Collection Procedures, Defendant is obligated to pay the IPF and IMI $2,984.66 in interest on such delinquent contributions, calculated from the Due Date at the rate of 15 percent per annum.

18.     As additionally provided for in ERISA Section 502(g)(2)(C)(ii) and the Collection Procedures, Defendant is obligated to pay the IPF and IMI $6,394.71 in liquidated damages on such delinquent contributions, calculated from the Due Date at the rate of 20 percent.

19.     The audit fee in the amount of $2,284.65 is recoverable under ERISA Section 502(g)(2)(D), and the terms of the Collection Procedures.

4

20.    The court fee of $350.00 for filing this action is recoverable under ERISA Section 502(g)(2)(D) and the terms of the Collection Procedures.

21.    The process server's cost of $286.85 for serving the summons and Complaint is recoverable under ERISA Section 502(g)(2)(D) and the terms of the Collection Procedures.

22.    Attorney's fees of $3,428.50, which are recoverable under ERISA Section 502(g)(2)(D) and the terms of the Collection Procedures, have been incurred by the Plaintiffs in their attempt to collect delinquent contributions, interest and liquidated damages due from Defendant.  An accounting of the attorney's fees incurred in this action is presented in the Declaration of counsel to the IPF, which accompanies this Motion for Default Judgment.

23.    The total amount owed the IPF and IMI by Defendant in delinquent contributions for the months of August 2005 through December 2006 as determined by the audit, and for the months of October 2006 through May 2007, as determined by the IPF Recap, interest on such delinquent contributions owed the IPF and IMI (calculated at the rate of 15 percent per annum), liquidated damages (calculated at the rate of 20 percent) on such delinquent contributions owed the IPF and IMI, audit fee, Court filing fee, process server's fee and attorney's fees is $47,702.54.

I declare under penalty of perjury that the foregoing is true and correct.

Date: ___November 28___, 2007          _____
                                        David F. Stupar
                                        Executive Director

5

Attachment 1

5/13/02

### GENERAL COLLECTION PROCEDURES OF
### THE CENTRAL COLLECTION UNIT OF
### THE BRICKLAYERS AND ALLIED CRAFTWORKERS

These General Collection Procedures govern the collection of delinquencies by the Central Collection Unit of the Bricklayers and Allied Craftworkers ("CCU") on behalf of the following participating entities: Bricklayers and Allied Craftworkers International Union ("BAC"); Bricklayers and Trowel Trades International Pension Fund ("IPF"); Bricklayers and Allied Craftworkers International Health Fund ("IHF"); International Masonry Institute ("IMI"); Bricklayers and Allied Craftworkers Political Action Committee ("BACPAC"); and Local Officers and Employees Pension Fund ("LOEPF") (collectively "CCU Entities"). IHF and BAC SAVE are covered by Special Collection Procedures. Such Special Collection Procedures shall control when in conflict with these General Procedures.

I.     REPORTS AND PAYMENTS TO CCU ENTITIES

    A.     Due Date

        1.     Contributions and reports to the CCU Entities are due on or before the 15th day of the month following the month for which the contributions are being paid ("Due Date"), unless the collective bargaining agreement imposes a different Due Date.

        2.     Reports of participating employers must be filed each month even if no contributions are due for that month. All participating employers, whether submitting contributions directly or through a local administrator or local union, must use the standard CCU report form.

        3.     Employer reports will be date-stamped on the day received in the CCU Office, or in the case of local administrators or local unions, on the day received by the local. The stamped date will be the controlling date with regard to these Collection Procedures.

        4.     If any controlling date under these Collection Procedures falls on a weekend or legal holiday, the applicable date will be the next working day.

5. The IPF is authorized by other CCU Entities to act on their behalf in litigation. All references to "CCU Office" in these Collection Procedures may also refer to "IPF Office," as applicable.

B. Notice Of Delinquency

1. If the CCU Office has not received payment by the last day of the month of the Due Date, the CCU Office will send a Reminder Notice to the employer. If payment has not been received 30 days after the Reminder Notice, a Notice of Delinquency will be sent to the employer.

2. The Notice of Delinquency will advise the employer that required contributions were not received by the Due Date and warn that if the contributions are not received within 15 days (60 days following the Due Date), the employer will be considered delinquent ("Delinquent Date") and will be assessed interest at 15% per annum (retroactive to the Due Date) and may be required to pay Liquidated Damages of 20% of the delinquent amount. The Notice of Delinquency will require the employer to notify the CCU Office within five (5) days of the date of notice if the employer believes that the Notice of Delinquency was sent in error.

C. Notice Of Referral To Counsel

1. If the CCU Office has not received payment within 15 days of the Notice of Delinquency, the CCU Office will send to the employer a Notice of Referral to Counsel.

2. The Notice of Referral to Counsel will advise the employer that payments were not received by the Delinquent Date and that payments for contributions and interest are due and owing. Unless all sums owed are received by the CCU Office within 10 days following the Notice of Referral to Counsel, liquidated damages up to 20% of the delinquent contributions or statutory interest may be imposed and the matter automatically will be referred to counsel. The Notice of Referral to Counsel also will state that counsel will be instructed to seek all sums recoverable, including contributions, interest, liquidated damages or statutory interest, and all attorneys' fees.

2

II.    COUNSEL

    A.    Procedures

        1.    If CCU has not received the contributions and applicable interest within 10 days of the Notice of Referral to Counsel, the matter automatically will be referred to counsel no later than 15 days from the due date.

        2.    Within 10 days of referral, counsel will send a letter to the employer advising that if payment of contributions, interest and other damages is not received within 10 days, suit will be instituted.

        3.    Suit thereafter will be instituted.

    B.    CCU Policy Following Referral To Counsel

        1.    Following the referral of a matter to counsel, the CCU Office will have no authority to deal with an employer except to discuss computations.

        2.    Counsel shall file suit for all moneys recoverable, including damages that may be recoverable under Section 502(g)(2) of ERISA and also may seek remedies under applicable state law against individual corporate officers and/or shareholders.

        3.    The CCU is authorized to seek legal redress prior to the time that the above procedures are exhausted if, in his sole discretion, the Director concludes that the interests of affected participants require immediate action. If an employer fails to make payment when due, suit may be filed to collect all delinquent contributions, interest and other damages regardless of other exhaustion requirements in these Collection Procedures.

III.    AUDITS

    Audits will be conducted to insure full compliance with employer obligations under collective bargaining agreements. Every employer can expect to be audited at some time. If a delinquency is discovered as the result of an audit, the employer will be assessed the cost of the audit.

3

A.     Detection Of Delinquent Employers Subject To Audit

    1.     At least once every year, the Executive Directors of the IPF and IHF will send information to participants reflecting contributions received from participating employers.  The participants will be encouraged to report missing hours to the CCU.

    2.     The CCU will take steps to insure that delinquencies of participating employers are recovered.

B.     Audits Performed By Third Parties

    1.     The CCU will rely upon audits performed by third parties when CCU determines that they conform to auditing procedures contained in the CCU's Guidelines.

    2.     The CCU periodically will monitor the audits of third parties in order to confirm their reliability.

C.     Audits Performed On Employers Contributing Directly To The CCU

    1.     The CCU will coordinate with third parties who perform audits on employers contributing directly to CCU and will insure that such audits conform to CCU guidelines.

    2.     As to employers contributing directly to the CCU who are not subject to audits by third parties, CCU will perform two types of payroll audits on directly contributing employers in order to insure compliance.

        a.     <u>Random Audits</u> -- Audits may be conducted on any participating employer at any time, on a random basis, at the direction of the Director.

        b.     <u>Problem Audits</u> -- When the Director receives information from a local union, covered member or other source indicating that an employer may be delinquent, the Director may order that an audit be conducted.

D.     Notification Of Audit Delinquency

    1.     The CCU Office will send a Notice of Delinquency to audited employers found to be delinquent stating the amount of additional contributions owing as a result of the audit.

    2.     Any unsatisfied audit deficiency will be treated according to the CCU's Collection Procedures following the intervention of counsel.

4

E.    Form of Audits

    1.    All audits will be carried out under procedures formulated by the Director.

    2.    All employer books and records set forth in the audit procedures will be made available to the CCU auditor.

IV.    BONDS

The Director may, in his sole discretion, require an employer to post a cash or surety bond in an amount and under terms necessary to protect the interests of the applicable CCU Entity.

5

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 07-1623 (RMC) |
| ) | |
| BRICKMEN STRUCTURES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DECLARATION OF IRA R. MITZNER**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

Pursuant to 28 U.S.C. § 1746, I, IRA R. MITZNER, hereby declare as follows:

1.      I am a partner with the firm of Dickstein Shapiro LLP and the counsel of record for the Plaintiffs John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H.J. Bramlett, Eugene George, Paul Songer, William McConnell, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent Delazzero, and Benjamin Capp ("IPF"), and Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phillips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, ("IMI"), in the above-captioned case. I have personal knowledge of the facts stated herein and, if called to testify as a witness, I could and would competently testify as set forth below.

2.      On September 26, 2007, a copy of the Summons and Complaint was served upon Anthony Tapia, Owner, as agent of Brickmen Structures, Inc.

2354329.01

3.    As of this date, no Answer to the Complaint is reflected on the docket.

4.    As set forth in the accompanying Declaration of David F. Stupar, Defendant owes the following sums to Plaintiffs:

| | | |
|---|---|---|
| $ | 31,973.17 | Delinquent contributions due the IPF and IMI for work performed during the months of August 2005 through December 2006 (as determined by the audit), and for the months of October 2006 through May 2007 (as determined by the IPF Recap based on reports submitted by Defendant) |
| $ | 2,984.66 | Interest assessed on the above delinquent contributions due the IPF and IMI, calculated at the rate of 15 percent per annum from the Due Date |
| $ | 6,394.71 | Liquidated damages assessed on the above delinquent contributions due the IPF and IMI, calculated at the rate of 20 percent |
| $ | 350.00 | Filing fee (for U.S. District Court) |
| $ | 286.85 | Process Server's costs |
| $ | 2,284.65 | Audit costs |
| $ | 44,274.04 | Subtotal |

5.    Additionally, the Employee Retirement Income Security Act of 1974 ("ERISA") provides for the mandatory award of attorney's fees.   ERISA Section 502(g)(2)(D).  Plaintiffs' counsel has charged the Fund less than the firm's market rate in this matter for well-intentioned, public-spirited reasons.   Counsel for Plaintiffs has offered this reduced fee in order to mitigate financial hardships to the Fund, which provides retirement benefits to members of the International Union of Bricklayers and Allied Craftworkers.  We believe that our efforts help to ensure the viability of the Fund and, in turn, the welfare of those participants and beneficiaries who depend on their pensions for income after retirement.

2354329.01

6.    Counsel for the Funds, consistent with the decision of the United States Court of Appeals for the District of Columbia Circuit in *Board of Trustees of the Hotel and Restaurant Employees Local 25 and Employers' Health and Welfare Fund v. JPR, Inc.*, 136 F.3d 794, 800-808 (D.C. Cir. 1998), on remand, 1999 WL 1567733 (D.D.C Sept. 10, 1999), and for the reasons set forth in paragraph 5 above, therefore seeks to recover counsel's market rates in this action rather than the reduced fee charged to the Fund.

7.    The fees incurred to date by Dickstein Shapiro LLP in this action have been calculated according to the normal billing rates in effect currently or at the time services were performed for the Fund, and are as follows:

|  | Hours | Per Hour | Total |
|---|---|---|---|
| Ira R. Mitzner (Partner) | 1.10 | $535.00 | $588.50 |
| Claudette Elmes (Paralegal) | 14.20 | $200.00 | $2,840.00 |
| **Total** | **15.30** | | **$3,428.50** |

8.    The default of Defendant for failure to answer was entered by the Clerk of this Court on October 26, 2007.

9.    The total known balance due Plaintiffs by Defendant as of this date is $47,702.54.

10.    We therefore pray for entry of entry of default judgment in favor of Plaintiffs in the amount $47,702.54.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  ___Nov. 28___, 2007        _____
                                   Ira R. Mitzner

3

2354329.01

EXHIBIT C

Default - Rule 55A (CO 40 Revised-DC 02/00)

*FILE*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN FLYNN, et al.

Plaintiff(s)

Civil Action No. 07-1623 (RMC)

v.

BRICKMEN STRUCTURES, INC.

Defendant(s)

RE: BRICKMEN STRUCTURES, INC.

## DEFAULT

It appearing that the above-named defendant(s) failed to plead or otherwise defend this action though duly served with summons and copy of the complaint on September 26, 2007 , and an affidavit on behalf of the plaintiff having been filed, it is this 26th day of October, 2007 declared that defendant(s) is/are in default.

NANCY MAYER-WHITTINGTON, Clerk

By: _____

Deputy Clerk

EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, JAMES BOLAND, GERALD O'MALLEY, KEN LAMBERT, GERARD SCARANO, H. J. BRAMLETT, EUGENE GEORGE, PAUL SONGER, WILLIAM MCCONNELL, MATTHEW AQUILINE, GREGORY R. HESS, MICHAEL SCHMERBECK, VINCENT DELAZZERO, and BENJAMIN CAPP, as Trustees of, and on behalf of, the BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND 620 F Street, N.W. Washington, DC 20004 (202) 783-3788, | ) ) ) ) ) ) ) ) ) ) |

Case: 1:07-cv-01623
Assigned To : Collyer, Rosemary M.
Assign. Date : 9/13/2007
Description: Labor-ERISA

| | |
|---|---|
| and | ) ) ) |
| JIM ALLEN, MATTHEW AQUILINE, LON BEST, JAMES BOLAND, TED CHAMP, RAYMOND CHAPMAN, VINCENT DELAZZERO, BRUCE DEXTER, JOHN FLYNN, EUGENE GEORGE, GREGORY HESS, FRED KINATEDER, DAN KWIATKOWSKI, KEN LAMBERT, SANTO LANZAFAME, DICK LAUBER, WILLIAM MCCONNELL, EDWARD NAVARRO, GERALD O'MALLEY, JOHN PHILLIPS, CHARLES RASO, MARK ROSE, KEVIN RYAN, GERARD SCARANO, MICHAEL SCHMERBECK, PAUL SONGER, JOSEPH SPERANZA, and FRED VAUTOUR as Trustees of, and on behalf of, the INTERNATIONAL MASONRY INSTITUTE 620 F Street, N.W. Washington, DC 20004 (202) 783-3788, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| BRICKMEN STRUCTURES, INC. 7819 Grayson Road NW Albuquerque, NM 87120, | ) ) ) ) |
| Defendant. | ) ) |

Civil Action No:

2316696.01

## COMPLAINT

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO LLP, complaining of the Defendant, allege as follows:

### CAUSE OF ACTION
### Jurisdiction and Venue

1.  This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund") and the fiduciaries of the International Masonry Institute ("IMI") to enforce the terms of the Plan and Trust Agreements adopted by the IPF and IMI, and the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").    This action arises under the laws of the United States, specifically Section 502(a)(3), 502(g)(2), and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), 1145.  Pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court as to the claims brought on behalf of the IPF and IMI.

2.  The IPF and IMI are administered in the District of Columbia.  Venue for the claims asserted by the IPF and IMI is conferred on this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

> (2)  Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

### Parties

3.      Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Paul Songer, William McConnell, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero and Benjamin Capp, are Trustees of,

2

and sue on behalf of, the IPF.  The IPF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).  The IPF trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

4.      The IPF is also authorized to effect collections on behalf of the IMI, pursuant to a written Assignment of Claims and the *Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers* ("Collection Procedures").

5.      Plaintiffs, Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phllips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, are Trustees of, and sue on behalf of the IMI.  The IMI is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).  The IMI trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IMI in their respective capacities as fiduciaries.

6.      Defendant, Brickmen Structures, Inc. ("Brickmen Structures" or "Defendant") is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of New Mexico.

7.      Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

3

2316696.01

## **Violation Charged**

8.     Brickmen Structures acting through its authorized agents or officers, executed a collective bargaining agreement with the Union.  The collective bargaining agreement is annexed hereto as Exhibit A and is hereinafter referred to as the "Agreement."

9.     Pursuant to the Agreement, Defendant agreed to make certain payments to the IPF and IMI on behalf of covered employees of Defendant.

10.     Having submitted some contributions, Defendant has demonstrated an awareness of the obligation to make those payments.

11.     An examination of Defendant's books and records ("audit") performed by the independent accounting firm of Calibre CPA Group PLLC covering the time period August 2005 through December 2006 revealed that Defendant failed to properly submit required reports and contributions for work performed during this time period.

12.     The total of contributions due the IPF and IMI by Defendant for work performed during the months of August 2005 through December 2006, as determined by the audit, amounts to $21,612.27.

13.     Under the terms of the Plan and Trust Agreements adopted by the IPF and IMI, interest in the amount of $1,857.81, calculated from the Due Date at the rate of 15 percent per annum, and liquidated damages in the amount of $4,322.47 at the rate of 20 percent have been assessed on such delinquent contributions determined due by the audit.

14.     In addition, Defendant failed to submit contributions to the IPF for work performed during the months of October 2006 through May 2007.  As determined by a Recap prepared by the IPF based on reports submitted by Defendant relating to work performed during

4

this time period, Defendant owes the IPF a total of $10,360.90 in contributions for work performed during the months of October 2006 through May 2007.

15.     Under the terms of the Plan and Trust Agreements adopted by the IPF and IMI, interest in the amount of $841.57 calculated from the Due Date at the rate of 15 percent per annum and liquidated damages in the amount of $2,072.24 at the rate of 20 percent, have been assessed on such delinquent contributions determined due for work performed during the months of October 2006 through May 2007.

16.     Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1).  Plaintiffs have been, and are, incurring additional attorney's fees as a direct result of Defendant's failure to make contributions in accordance with the terms and conditions of the Agreement.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.  For the total amount of $43,701.91, which is constituted as follows:

a.  For unpaid contributions in the amount of $31,973.17 payable to the IPF and IMI for the time period August 2005 through May 2007, plus any and all additional amounts found to be due and owing through the date of judgment (ERISA  Section 502(g)(2)(A); Collection Procedures);

b.  For interest in the amount of $2,699.38 assessed on such unpaid contributions, calculated at 15 percent per annum from the Due Date (ERISA Section 502(g)(2)(B); Collection Procedures);

c.  For liquidated damages in the amount of $6,394.71, assessed on such unpaid contributions, calculated at 20 percent (ERISA Section 502(g)(2)(C)(ii); Collection Procedures);

5

2316696.01

d. For the costs of filing this action in the amount of $350.00 (ERISA Section 502(g)(2)(D));

e. For the costs of conducting the audit in the amount of $2,284.65 (ERISA Section 502(g)(2)(D));

2. In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D)).

3. That Defendant be directed to comply with its obligations to submit all required reports and to make all contributions due and owing to the IPF and IMI, and to pay the costs and disbursements of this action.

4. Such other relief as this Court deems appropriate, including judgment for any contributions and interest thereon that may accrue subsequent to the filing of this Complaint, as well as any resulting statutory damages thereon under ERISA.

Dated: September 13 , 2007

By: _____

Ira R. Mitzner, DC Bar No. 184564
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
(202) 420-2200

Attorneys for Plaintiffs

6

EXHIBIT A

NM 0502

INTERNATIONAL UNION OF BRICKLAYERS & ALLIED CRAFTWORKERS

# *LOCAL UNION No. 03*
# *ARIZONA ● NEW MEXICO ● TEXAS*



# *NEW MEXICOCOLLECTIVE BARGAINING AGREEMENT*



RECEIVED

APR 2 7 2005

BARGAINING SERVICES

NM 0502

**TABLE OF CONTENTS**

| | | PAGE |
|---|---|---|
| **Article I** | **Coverage** | 4 |
| | Union Security | 4 |
| • | Scope of Work | 4 |
| • | Subcontracting | 5 |
| • | Traveling Contractors | 5 |
| • | Excluded Employees | 5 |
| • | Effect of Agreement | 5 |
| **Article II** | **Termination Renewal and Reopening** | 5 |
| • | Term | 5 |
| • | Reopening | 5 |
| • | Negotiations for New Agreement | 5 |
| **Article III** | **Most Favored Nations** | 6 |
| **Article IV** | **Harmony and Cooperation** | 6 |
| • | Management Rights | 6 |
| • | Problems of Mutual Interest | 6 |
| • | List of Contracts | 6 |
| • | Pre-Employment Conferences | 6 |
| • | Public Construction Projects | 6 |
| **Article V** | **Accredited Representatives & Stewards** | 7 |
| • | Access to Jobs | 7 |
| • | Stewards | 7 |
| **Article VI** | **Union Security** | 7 |
| **Article VII** | **Non-Discriminatory Referral Procedures** | 8 |
| ▪ | Hire Procedure | 8 |
| ▪ | Right to Reject | 8 |
| ▪ | Registration Facilities | 8 |
| ▪ | Order of referral | 8 |
| ▪ | Qualification Records | 9 |
| ▪ | Referral Complaint | 9 |
| ▪ | Appeals | 9 |
| ▪ | Referral Fees | 9 |
| ▪ | Areas not served | 9 |
| ▪ | Nondiscriminatory Affirmative Action | 9 |
| ▪ | Immigration Reform Act | 9 |
| ▪ | Drug Testing | 10 |
| ▪ | Access to Facilities & Records | 10 |
| ▪ | Posting of this Article | 10 |
| ▪ | Save Harmless | 10 |
| **Article VIII** | **Universal Working Rules** | 10 |
| ▪ | Single Daytime Shift | 10 |
| ▪ | Four – Tens | 10 |
| ▪ | Make Up Day | 10 |
| ▪ | Overtime | 11 |
| ▪ | Deviation in start Time | 11 |
| ▪ | Multiple Shifts | 12 |
| ▪ | Special Shifts | 12 |

- Minimum Pay .................................................... 12
- Show-up Pay .................................................... 12
- Payment of Wages .............................................. 12
- Holiday ........................................................ 12
- Drinking Water ................................................ 13
- Employee Facilities ........................................... 13
- Masonry Units ................................................. 13
- Masonry Saws .................................................. 13
- Scaffolds ..................................................... 14
- Tools of the Trade ............................................ 14
- Wall Height ................................................... 14
- Mortar Boards ................................................. 14
- Change of Clothes ............................................. 14

Article IX    Grievance Procedure ............................... 14

Article X    Fringe Benefits .................................... 15

- Bricklayers Trowel Trades International Pension Trust Fund ..... 15
- Bricklayers Trowel Trades International Retirement
  Savings Plan (BAC SAVE) ...................................... 15
- NM & W. Texas Health & Welfare Trust Fund ..................... 16
- New Mexico Bricklayers & Allied Craftworkers
  Joint Apprentice & Training Trust Fund ....................... 16
- New Mexico Bricklayers & Allied Craftworkers Vacation Trust Fund ... 16
- Build New Mexico .............................................. 16
- International Masonry Institute ............................... 16
- Dues Check-Off Provision ...................................... 16
- BAC-PAC Provision ............................................. 17
- Notification of Delinquencies ................................. 18

Article XI    No Strike - No Lockout ............................ 18

Article XII    Apprenticeship .................................. 18

Article XIII    Hourly Rate, Insurance, Payroll Deductions ..... 18

Article XIV    General ......................................... 19

Article XV    Additional Unions ................................ 19

Article XVI    Preservation of Work ............................ 19

Article XVII    Separability and Savings Provisions ............ 20

Statement of Policy & Principal ................................. 20

Article XVIII    Wages ......................................... 21

Article XIX    Bonding ......................................... 24

Appendix A    Tools of the Trade ................................ 25

**NM  0502**

**THIS AGREEMENT, ENTERED INTO THIS 1st DAY OF APRIL, 2005**

By and between

**SIGNATORY EMPLOYERS**
(hereinafter referred to as the Contractor)

And the

INTERNATIONAL UNION OF BRICKLAYERS and ALLIED CRAFTWORKERS OF LOCAL UNION No. 03
ARIZONA, NEW MEXICO, TEXAS  (hereinafter referred to as the Union or Employees).

The Contractor is engaged in contract construction work in New Mexico; and, in the performance of the Contractor present and future contracting operation, the employees are represented by the Union.   The Contractor desires to be assured of his ability to procure employees for all work that they may do in the State of New Mexico in sufficient numbers and skill to assure continuity and quality of work in the performance and completion of their construction contracts.

It is the interest of all parties to establish uniform rates of pay, hours of employment and working conditions that will be relevant to all employees represented by the Union and performing the work for the Contractor as defined in this Agreement, and to provide for peaceful and harmonious relationships during the term of this Agreement.

## ARTICLE I – COVERAGE

### 1.    UNION SECURITY

A.          Inasmuch as (1) the Union has requested recognition as the majority, Section 9(a), representative of the Employees in the bargaining unit described herein and (2) has submitted or offered to show proof of its majority support by those Employees, and (3) the Employer is satisfied that the Union represents a majority of the bargaining unit Employees, the Employer recognizes the Union, pursuant to Section 9(a) of the National Labor Relations Act, as the exclusive collective bargaining agent for all employees within that bargaining unit, on all present and future jobsites within the jurisdiction of the Union.

B.          No later than eight (8) days following the effective date of this Agreement, all present employees must, as a condition of continued employment, be or become members of the Union; all employees hired after the effective date of this Agreement shall be or become and remain members of the Union no later than eight (8) days following the first day of their Employment in accordance with the provisions of Section 8 of the National Labor Relations Act, as amended.  Failure of any employee to comply with the provisions of this subsection shall, upon request of the Union, result in termination of such employee, provided that the Union has given the employee four (4) days notice that the employee's obligation to make payment has not been met and that the delinquency renders the employee liable to termination under this section.  The Employer shall not be obligated to dismiss an employee for non-membership in the Union:  (a) If the employer has reasonable grounds for believing that such membership was not available on the same terms and conditions generally applicable to other members; or (b) If the employer has reasonable grounds for believing that such membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

C.          International Union Representatives and the officer primarily responsible for the day to day affairs of the Union or said officer's representatives shall have access to the Employer's jobsites at reasonable times in compliance with any special rules and regulations adopted by the owner to ensure that the provisions of this Agreement are observed, provided however, that such representatives shall not unduly interfere with the job progress.

### 2.    SCOPE OF WORK.    This Agreement shall cover new construction, maintenance, repair and renovation on all commercial, industrial, heavy highway, & residential construction within all New Mexico counties.

(a)          This Agreement shall cover all Brick, Block, Plaster, Cement, Stone, Tile, Marble, Terrazzo, Terra Cotta, Mosaics, PCC, and Finishers work falling within the jurisdiction of the Union, as defined in Branches of the Trade,

4

Code 1 of the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers which is incorporated herein by reference.

3.    **OBSERVANCE OF AGREEMENT IN SUBCONTRACTS.**    The Employer agrees not to sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction project to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all of the terms and conditions of this Agreement.

A.    All charges of violation of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedures for the handling of disputes and the final and binding arbitration of disputes.

4.    **TRAVELING CONTRACTORS**.    When the Employer has any work specified in Section 1 (a) of this Article to be performed outside of the area covered by this Agreement and within the area covered by a standard Collective Bargaining Agreement of another affiliate of the International Union of Bricklayers and Allied Craftworkers, the Employer agrees to abide by the full terms and conditions of the standard Agreement in effect in the job site area with respect to all employees, wherever hired, who perform such work, except as provided in the next sentence of this paragraph. Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Article XVIII of this Agreement but in no case less than the established minimum wage scale of the local Agreement covering the territory in which such work is being performed plus all contributions specified in the jobsite local Agreement. The Employer shall in all other matters be governed by the provisions established in the jobsite local Agreement. If employees are sent to work on a project in an area where there is no local Agreement covering the work specified in Section 1 (a) of this Article, the full terms and conditions of this Agreement shall apply.

5.    **EXCLUDED EMPLOYEES.** The following categories of the Contractor's employees shall not be covered by the provisions of this Agreement: executives; general superintendents; assistant general superintendents; civil engineers; all supervisory employees above foreman; guards; timekeepers; messengers; office workers; and any other class of employees that may be excluded from coverage's defined in the National Labor Relations Act, as amended.

6.    **EFFECT OF AGREEMENT.**  This Agreement applies to all construction work including maintenance and residential (a residential agreement is available) work performed in the Union's jurisdiction by the Contractor. If the Union desires to enter into an Agreement for a specific construction project in areas covered by this Agreement that provides for wages, fringe benefits or working conditions more favorable than the terms and conditions contained in this Agreement, the Union shall, prior to the submission of bids for the project, mail or FAX to each signatory Contractor bidding on the project a written notice of the more favorable terms.

### ARTICLE II - TERMINATION, RENEWAL AND REOPENING

1.    **TERM.** This Agreement shall commence as of April 1, 2005 and shall remain in effect until March 31, 2007. It shall continue in effect from year to year thereafter, unless either party hereto terminates this Agreement as of April 1, 2007 or any subsequent April 1st, by written notice given on or before the 1st day of December immediately proceeding such April 1st termination date.

2.    **REOPENING.**  This Agreement shall not be reopened during the initial term hereof, without written consent by both parties, enumerating subjects to be discussed.

3.    Article IX, Section C (2) (Arbitration) shall not apply to any reopening or to any impasse in negotiations as a result thereof. Article IX, Sections C (1) and (2) shall not apply if there is an impasse in negotiations during any reopening.

4.    **NEGOTIATIONS FOR NEW AGREEMENT.** Negotiations between the parties hereto shall being no later than sixty (60) days immediately preceding any April 1st termination notice given pursuant to Section 1 of this Article. The intent and spirit of advancing negotiations is twofold:

5

NM 0502

A. To provide the Contractor with an approved wage.

B. To assist the Union in establishing any new wage rates and working condition by effective dates thereof.

## ARTICLE III - MOST FAVORED NATIONS

It is understood and mutually agreed that in the event the Union enters into an agreement which provides for terms or conditions of employment which are more favorable than those contained in this Agreement for specific projects, particular segments of the masonry market or certain geographic areas, those same terms and conditions of employment will be made available to the Employer on the specific projects, particular segments of the masonry market or in those geographic areas covered. The only exceptions to this provision are (1) those initial agreements that are signed with newly organized employers to provide a bridge between those rates which are initially established and those which prevail for signatory contractors in the masonry market in which the newly organized contractor is going to operate, (2) that whenever the Employer is bidding or negotiating for a masonry project where competing work forces are determined to be the likely contractor for the project, the Union will consider, special conditions for that project which may be necessary to secure the work opportunities on that project for signatory Employers and employees represented by the Union. Any special conditions of employment or wage and contribution rates granted under the provisions of this Agreement for a specific project or geographic area will be available to any and all other Employers signatory to this Agreement for that project or geographic area upon their request, (3) any instance in which a job is bid to be completed during a particular contract period, and the job is delayed for reasons beyond the contractor's control so that it falls into a later contract period, and the Union agrees to perform the work under the wage rates in effect when the work was expected to be done. Should any question arise as to the meaning and application of this provision, either party may file with the other a written complaint. Such complaint will be initiated at Step 3 of the grievance procedure set forth in Section C of Article IX of this Agreement (referred to Joint Arbitration Board), and shall be processed in accordance with the procedure for the handling of grievance and the final and binding arbitration of disputes.

## ARTICLE IV - HARMONY AND COOPERATION

1.     **MANAGEMENT RIGHTS.** The Contractor retains full and exclusive authority for the management of its operations, except as expressly restricted by this Agreement. By way of illustration only, and not limited either as to authority or types of authority retained, this authority shall include, but not limited to the following: The Contractor shall direct his working forces at his sole prerogative, including but not limited to, hiring, promotion, transfer, lay-off, or discharge for just cause, provided there shall be no discrimination against any employee by reason of Union activity that does not interfere with the proper performance of his work. Rules, customs, or practices will not be permitted or observed that limit or restrict production, or limit or restrict the working efforts of employees. The Contractor shall schedule work, and will determine when overtime will be worked; provided that employees will not be required to work under any conditions that are injurious to their health or safety, as provided in Federal or State laws and regulations governing construction.

2.     **PROBLEMS OF MUTUAL INTEREST.** The representatives of the Union and of the Contractor shall meet on problems of mutual interest.

3.     **LIST OF CONTRACTS.** Within 48 hours after receipt of written request from the Union, a Contractor shall furnish the Union a list of all contracts and subcontracts entered into for a specific job.

4.     **PRE-EMPLOYMENT CONFERENCES.** At the request of either party, and prior to commencing work on a project, representatives of the Union and Contractor shall hold a pre-employment conference.

5.     **PUBLIC CONSTRUCTION PROJECTS.**     The parties will cooperate on public construction projects, Federal and State, to the end that authorized construction projects will be awarded to the contract construction industry and that contracting officials will be accurately and fully informed as to fringe benefits and prevailing rates of pay.

On public works projects where a minimum wage rate has been established, the Contractor agrees to pay the wage rate established in this Agreement unless, the public works wage rate drops 5% or more below the established Agreement rate. Then the Contractor and Union may negotiate an appropriate wage rate for that project.

NM 0502

## ARTICLE V - ACCREDITED REPRESENTATIVES AND STEWARDS

1.    **ACCESS TO JOBS.** Accredited representatives of the Union shall have access during working hours to all open jobs.   Access to jobs under Government restrictions shall be subject to the regulations prescribed by the Owner.  Contractor agrees to assist the Union toward securing access to closed jobs. "Closed" and "Open" refer to jobs where Federal Government security clearance is necessary for personnel.  Accredited representatives will not unnecessarily delay workmen or the progress of the job during working hours.

2.    **STEWARDS.** A.  The Employer shall hire a steward appointed by the officer primarily responsible for the day to day affairs of the Union, or said officer's designee, on all jobs.  The steward shall be a working employee and shall, when appropriate, be granted reasonable time to conduct union business. The Contractor shall be notified of the steward appointed in writing.

B.   The job steward shall be permitted on the job at all times; shall be a working employee; and shall not be subject to discharge on account of Union activities.   These activities shall not unreasonably interfere with his work for the Contractor.

C.   The steward shall remain on the job as long as there is work that he is qualified to perform.   In the event of a job shutdown, the steward will be the first employee, excluding supervisory personnel, to be called to the job when it is restarted.

D.   The Contractor shall give the Union written notice before discharging a steward.  A steward may be discharged for just cause only.

E.  The steward's duties include, but not necessarily be limited to the following:

1.  Check the job referral of each employee dispatched to the Contractor.

2.  Work with the Contractor's designated representative in charge of the job in an attempt to resolve disputes prior to the application of the grievance procedure.

3.  Report to the Contractor's designated representative any work belonging to the bricklayers being done by non-union workmen or by another craft.

4.  Report to the business representative any grievances that have not been resolved under Step 1 of the Grievance Procedure (Article VII 4B).

5.  Report to the Contractor's designated representative or the business representative reckless or unsafe conditions on the job site.

6.  In case of injury to an employee, the steward shall care for the injured employee's belongings.

7.  The steward will suffer no loss time in the performance of his duties as outlined or in the securing of a weekly report.

F.  The steward will not cause or encourage a work stoppage, and will not encourage, or cause, any employee to leave a job, or discourage any employee from reporting for work.  Violation of this paragraph shall constitute just cause for discharge.
progress.

## ARTICLE VII- NON DISCRIMINATORY REFERRAL PROCEDURE

1.    **HIRE PROCEDURE.**  The Contractor shall notify the Union of the need for workmen coming within the jurisdiction of the Union and the Union shall refer the workmen to the Contractor as provided herein.

2.    **RIGHT TO REJECT.**  The Contractor may reject any Union referred applicant for any reason other than Union or non-union status.  The Contractor shall maintain a written record of referred workmen who have been rejected for employment, together with the reasons for the rejection.  The records shall be made available to the Union upon request.

3.    **REGISTRATION FACILITIES.**  Registration facilities of Local Union No. 1 shall be available, at a minimum, between the hours of 7:30 a.m. to 10:00 a.m. Monday through Friday, except holidays.  The Union shall furnish a list of referral facilities on request.

Applicants for employment will be registered by the Union in the order they appear for registration and will be placed on the referral group list that the registrant qualifies.

The term "applicants for employment" used in this Article shall include applicants for employment as apprentices. Apprentices referred shall be certified by the referral facility as registered by a Joint Apprenticeship Committee.

4.    **ORDER OF REFERRAL.**  Unless the Contractor requests a particular applicant by name, registered workmen will be referred by the Union in the order of their place on the respective referral lists, first taking registrants in Group A, then registrants in-groups B.

    A. **GROUP A.**  Applicants in the order of their registration who have worked in the State of New Mexico for licensed Contractors within any year immediately preceding their registration and who have maintained actual physical residence for the past six (6) months in New Mexico.

Bricklayers registered on the Group A list who have been sent to an out-of-state job will be eligible for re-registration and referral from the Group A list, provided the absence from New Mexico does not exceed two (2) years.

The Contractor may request up to fifty percent (50%) of the registrants by name from the Group A list, provided the Contractor has previously employed them.

If a Contractor desires to employ an applicant who is not registered with the Union and who qualifies under the Group A list, he shall send the applicant to the Union with a written order to the Union specifying that the applicant is to be registered and given first preference for referral to the Contractor.

    B. **GROUP B.**  All other applicants in the order of their registration.

    C. **MAINTAINING POSITION ON REFERRAL LIST.**  Registrants whom are passed over by virtue of not being available when their place on the list would have entitled them to referral shall maintain their position on the group list that they are registered.

Registrants whom are rejected by a Contractor as provided in Paragraph 2, shall maintain their position on the group list that they are registered.

When a referred registrant has been employed on a job for one day, his name shall be removed from the list until his employment has been terminated, at that time he may re-register at the bottom of the group list that he qualifies.

When a registrant refuses to accept employment, his name shall be placed at the bottom of the appropriate list.

D. **RE-REGISTRATION.** Registrants on the out-of-work list not referred to a job within the calendar month of their original registration or re-registration must re-register between the twenty-fifth (25th) and last day of each month. Registrants who fail to re-register each month will be dropped from the out-of-work list.

5.     **QUALIFICATION RECORDS.** The Union shall require all applicants registering for the first time to submit a resume of experience and qualifications in order for them to be classified in their appropriate group list, in order that referrals may be made on the basis of special skills and abilities.     When Contractors call for workmen possessing special skills and abilities the Union shall refer the first applicant in the priority group list whom possesses the special skills and abilities. The Union makes referrals solely on the basis of qualifications set forth in the resume, and the Union assumes no responsibility for the actual skills and abilities of the workmen referred.

6.     **REFERRAL COMPLAINT.** When a job applicant is aggrieved: a) because of his group listing; or b) because of order of referral; or c) for other reasons related to the operation of the referral; the aggrieved may within ten (10) days following the occurrence of the event constituting the basis for his grievance, file a written and specific statement of his grievance with the Union representative in charge of referrals.

7.     **APPEALS.** An Appeal Board consisting of a Contractor representative, a Union representative and a Chairman appointed jointly by the other two members shall within five (5) days after the grievance is filed, consider the grievance and within five (5) days thereafter, render a written decision according to the letter and spirit of this Agreement, the decision shall be final and binding. The Appeal Board may formulate and issue procedural rules for the conduct of this Article. An aggrieved will be given at least three (3) days notice at the time and place where his appeal will be heard.

8.     **REFERRAL FEES.** In order to defray the cost of providing hiring facility services to the workmen and Contractors, the Union may charge a registration fee, not to exceed the reasonable proportionate cost of operating the referral facility, to any applicant who is not a member of the Union when he seeks to register.

9.     **AREAS NOT SERVED.** The Contractor shall be free to recruit sufficient workmen outside the referral facility, and the workmen need not be registered, in the following events: a) if the Union fails to provide required workmen sufficient to fill the Contractor's request within forty-eight (48) hours following the request (Saturdays, Sundays and holidays excepted); or b) where it is apparent that referrals cannot be made by the Union within the required forty-eight (48) hours; or c) due to governmental rule or regulation, the registration or referral provisions cannot be lawfully applied to a site or project, in that event the Union shall promptly notify the Contractor. The Contractor shall notify the Union of these hirings.

10.     **NONDISCRIMINATION - AFFIRMATIVE ACTION.** Registration and referral of applicants shall be in a non-discriminatory basis and shall in no way be affected by Union membership, by-laws, rules, regulations, constitutional provisions, or any other aspect or obligation or Union membership, policies or requirements, or by any consideration that applicable anti-discrimination statutes forbid as a criterion for employment.

The Union will take affirmative action in order to implement the Federal Government policy of equal employment opportunity and to follow the guidelines set forth in Executive Order No. 11246 and any amendments thereto, the Equal Employment Opportunity Act of 1964 as amended, and any other applicable Federal or State anti-discrimination statute. The Union will establish a source of recruitment for minority applicants by contacting recognized representatives of minority groups in this State and by taking other steps that are necessary to comply with these statutes. If the Union is unable, within a reasonable time, to provide a Contractor with workmen who satisfy the criteria or requirements contained in any regulation of, or program or agreement entered into by the Contractor or Union, the Contractor may recruit and hire workmen sufficient to satisfy those requirements. The Contractor shall notify the Union of the names and addresses of workmen hired, within two (2) days after the commencement of employment. The employees shall be subject to all terms and provisions of this Agreement.

11.     **IMMIGRATION REFORM ACT.** The Union and Contractor will cooperate in establishing a procedure for screening all applicants for employment as required by Public Law 99-603, The Immigration Reform Act.

12.    **DRUG TESTING.** The Union recognizes the right of the Contractor to establish a drug testing policy for employees. Employees can be discharged for refusing to submit to drug screening, drinking alcoholic beverages on the job, drunkenness, dishonesty or for any unlawful activity that effects the employee's performance on the job.

When the Union refers an employee to a Contractor that has a drug-screening program in effect, the Union will notify the employee that he will be subjected to a drug test before starting work.

13.    **ACCESS TO FACILITIES AND RECORDS.** The Contractor shall have the right to inspect the referral facilities, examine any records pertaining to its operation, and make any investigation necessary to establish that the terms of this Article are being fully complied with. Any information contained in the records provided for under paragraphs 5 and 11 shall be made available to the Contractor by telephone or by mail, as may be requested.

14.    **POSTING OF THIS ARTICLE.** A full copy of this Article shall be posted in plain view and made available for inspection by applicants for employment and employees, at the referral facility at or near place of registration, at the Contractor's permanent office and at any other place where notices to employees and applicants are customarily posted. The notice shall carry in bold type the following:

**NOTICE TO ALL APPLICANTS, WHETHER OR NOT MEMBERS OF THE UNION: AN AGREEMENT BETWEEN THE CONTRACTOR AND THE BRICKLAYERS LOCAL UNION, INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS OF AMERICA PROVIDES FOR A NON-DISCRIMINATORY SYSTEM FOR RECRUITING APPLICANTS FOR EMPLOYMENT.**

15.    **SAVE HARMLESS.** Should either the Contractor or Union violate, or fail to comply with, any of the terms or conditions of this Article, by discrimination or otherwise, and thereby cause liability to be asserted against or imposed on the other, the non-complying party shall indemnify, defend, save and hold the other harmless from any and all liability, loss, cost, expense, and damage, including, but not limited to, legal fees, wages or other charges incurred by reason of the conduct.

### ARTICLE VIII- UNIVERSAL WORKING RULES

1.    A. SINGLE DAYTIME SHIFT.   The standard work day shall consist of eight (8) hours of work between the hours of 7:00 a.m. and 5:00 p.m., with a ten (10) minute paid break two hours following start time and lunch, thirty (30) minute unpaid lunch period occurring in the middle of the shift. The standard workweek shall consist of five standard workdays commencing on Monday and ending on Friday, inclusive. The normal starting and quitting times may be changed by mutual consent of the Employer and the Union.

B. Four - Tens (4 - 10s). On out of town work and in specific circumstances when it is required, four ten hour work days will be allowed on straight time wage rates when not restricted through State or Federal regulations. Any work under the jurisdiction of the Union performed on the fifth (5) day shall be compensated at the double time rate of pay.

C. 1. MAKE-UP-DAY: (i.e.) Eight (8) Hour Work Day.    Provided a job runs at least five (5) days, and in the event the job is shut down for four (4) hours or more in one workday, Monday through Friday, due to inclement weather, or due to other conditions when agreed upon by the Contractor and the Union, then, at the option of the Contractor, Saturday of the same week may be worked as a make up day.

The Saturday make up day will be considered identical in start and stop times as a regular eight (8) hour work day, even if some overtime is incurred. Make up days will be a voluntary basis and the Contractor agrees not to discharge any employee or discriminate against any employee who declines to work on a make up day. In no event shall the Contractor attempt to circumvent the overtime provisions of this agreement by employing supplemental labor for the make up day.

C. 2. MAKE-UP DAY (I.E.) FOUR (4) TEN HOUR WORKWEEK.    Provided a job runs at least four (4) working days, and in the event the job is shut down (8) hours or more in one workday, Monday through Thursday, due to inclement weather or due to other conditions when agreed upon by the Contractor and the Union, then, at the option of the Contractor, Friday of the same workweek may be worked as a make-up day. The Friday make-up day will be considered identical in start and stop times as a regular eight (8) hour work day, (even if some overtime is incurred).

Should ten (10) hours be lost due to inclement weather or due to other conditions when agreed upon by the Contractor and the Union, then, it would be worked as all other ten (10) hour work days.  Make up will be on a voluntary basis and the Contractor agrees not to discharge any employee or discriminate against any employee who declines to work on a make-up day.  In no event shall the Contractor attempt to circumvent the overtime provisions of this agreement by employing supplemental labor for make-up-day work.

If the make-up day happens to become the sixth (6th) day in a payroll period, the Contractor will note that the pay for the make-up day is an adjustment in the employee's prior payroll period.

D. OVERTIME.  It is agreed that overtime is undesirable and not in the best interests of the industry or the employee.  Therefore, except in unusual circumstances, overtime will not be worked. Therefore, except in unusual circumstances, overtime will not be worked. Where unusual circumstances demand overtime, it will be kept to what this Labor Agreement calls for.  However, all time worked in excess of the normal established workday or make-up day shall be paid at the rate of one and one-half (1½) times the hourly base wage rate in effect

TIME AND ONE-HALF.  The following time worked shall constitute overtime to be paid for at the rate of time and one-half the straight time rate set forth in the Appendix: 9th and 10th hours in any one day.   Work performed prior to the regular starting time or after regular quitting time (except where in accordance with Sections 1., 2. and 3 hereof); all work on Saturday will be paid at time and one-half the straight time rate.

DOUBLE TIME.  The following time worked shall constitute overtime to be paid for at double (2 times) the applicable rate set forth in the Appendix.   All work after the completion of the 10th hour, I work on Sunday and Holidays.

UNSCHEDULED OVERTIME.   When contractors are required to work more than two (2) hours of unscheduled overtime after normal quitting time; and for each four (4) hours of unscheduled overtime thereafter, the Contractor will furnish a meal or an allowance for each meal as set forth in this labor agreement.  In either case, sufficient time will be allowed to eat such meal at the designated two (2) and four (4) hour intervals.

MEALS.  If the Contractor does not furnish a meal, the Contractor will provide each employee with a minimum eight ($8.00) dollars meal allowance.

E. ADDITIONAL OVERTIME PROVISION.  Work performed in excess of five (5) consecutive hours without a thirty (30) minute lunch period shall be paid for at one and one-half times the straight time hourly rate until a thirty (30) minute lunch period has been provided.

Work shall not be performed in excess of ten (10) consecutive hours unless a second lunch period of at least thirty (30) minutes is furnished and the employees are paid the applicable overtime rate thereof.  In the event the particular work in progress can be completed within the eleventh hour it may, upon mutual consent, be continued to completion without interruption provided the Contractor pays for the lunch period at the applicable rate.

2.    DEVIATION IN STARTING TIME.  For a period of not less than five (5) consecutive working days, the Contractor may deviate the starting time of the complete job for the following reasons: Desert heat and/or wind, traffic conditions, when the Contractor is required, or similar conditions existing at the job site would impair the progress of the job.

11

3.    MULTIPLE SHIFTS.  A.  When elected by the Contractor, multiple shifts may be worked for three (3) or more consecutive days, provided the Union is notified twenty-four (24) hours in advance of the effective date and the starting times of the multiple shifts operations.

Men working on multiple shifts shall not be interchangeable with hours of separate shifts that overlap, nor shall any interval between shifts exceed the reasonable time (not to exceed one hour) necessary to change shifts.

B.  TWO SHIFTS OPERATION.  Each shift shall work eight consecutive hours and receive eight hours pay at the straight time rate on either shift.   Work in excess of eight hours, on either shift, shall be paid for at the applicable overtime rate.

C.  THREE SHIFTS OPERATION.  The first shift shall work eight consecutive hours. The second shift shall work seven and one-half consecutive hours, and shall receive eight hours pay at straight time rates, Monday through Friday. The third shift shall work seven consecutive hours, and shall receive eight hours pay at straight time rates. On a three-shift operation, all time worked on the third shift shall be deemed to have been worked on the same day as the first shift started.  Work in excess of these stated hours shall be paid the applicable overtime rate.

4.    SPECIAL SHIFT.  When maintenance or remodeling work cannot be performed on the regular day shift because establishments cannot suspend their operations during the day, a special single eight-hour shift may be used after the establishment closes.  Employees on this shift shall receive straight time rate of pay.  The applicable overtime rates shall apply.

5.    MINIMUM PAY.  Employees working Saturdays, Sundays or holidays shall be guaranteed four (4) hours pay at the appropriate rate, and if more than four (4) hours are worked, the employee shall be paid for actual hours worked at the appropriate rate.

6.    SHOW-UP PAY.  Unless an employee on the Contractor's payroll or an employee referred has been notified before leaving home not to report for work at the regular starting time and no work is provided, employee shall receive two (2) hours straight time pay.   If work is provided, a minimum of four hours straight time pay shall be paid. If more than four hours are worked in the day, a full days pay shall be paid provided the employee shall be paid for time worked if he has been prevented from working for reasons beyond the control of the Contractor such as: inclement weather, or breakdown causing discontinuance of a major unit of the project by the Contractor or his agent. Each employee will furnish the Contractor with his current address and telephone number where he can be contacted.

Employees who arrive in an unfit condition for work, without proper tools or credentials, who are not ready to go to work, or who are not qualified, shall not be paid show-up time.

7.    PAYMENT OF WAGES.   Employees shall be paid weekly on the job.   When employees are laid off or discharged, they shall be paid all wages due them at the time of lay-off or discharge, and when employees quit they shall be paid all wages due them on or before the next weekly regular payday.  However, payment in full for all verified time worked and not compensated for in the weekly paycheck may be picked up at the Contractor's office during regular office hours the following day.  Failure of the Contractor to meet these conditions shall result in additional pay being due employees based on eight (8) hours straight time for twenty-four (24) hours, or fraction thereof, when the payment is wrongfully withheld, unless the failure is the result of unavoidable circumstances or a mistake not related to financial inability to pay.

8.    HOLIDAYS.   The recognized holidays shall be New Year's Day, Memorial Day, Independence Day, Labor Day, Veterans Day (optional), Thanksgiving Day and the Friday after, and Christmas Day.  Whenever any of these holidays fall on Saturday, the Friday before shall be the observed holiday as well.  Whenever any of these holidays fall on Sunday, the Monday following shall be the observed holiday.  No work shall be performed on Labor Day except to save life or property.

9.    DRINKING WATER. Potable drinking water shall be supplied to all job sites, through bubble type fountains or potable water carriers that are equipped with disposable paper cups.    Ice water shall be furnished when requested by the Union.

10.    EMPLOYEE FACILITIES.    A.  Toilets shall be provided at job sites in the ratio of one (1) seat for each fifteen- (15) persons employed.  If privy type toilets are provided, they shall be fly tight, have covered seats, and shall be provided with adequate light, ventilation and a door, and shall be kept clean.

B.  Employees shall be permitted to store their lunches and tools in tool and/or supply rooms, and to use the rooms for changing clothes.

11.    JOB SAFETY.  A. The Contractors and employees shall observe Federal and State safety regulations.

B. Failure of an employee to observe safety regulations or published company safety rules that have been distributed to employees shall be just cause for immediate discharge.   No employee shall be required to work under unsafe conditions.

C. Employees shall provide their own safety shoes and hard hats.

D.  Employees shall be encouraged to attend safety programs offered by either the Union or the Contractor.

E. Apprentices will attend safety classes when offered as part of their training and are subject to penalties imposed by the J.A.T.C. upon failure to do so.

F. Contractors will supply safety equipment, such as safety rail, safety goggles, safety glasses, welding hoods and welding gloves.

G. Contractors will supply ladders.
H. When swinging stages are used for cleaning down, there shall be no more than two employees (and no one else) allowed on the stage at any time.

I. MASONRY UNITS.   If a masonry unit must be laid over reinforcing iron more than four (4) feet plus specified overlap on the job, the unit will be cut.  Masonry units forty (40) pounds or more shall be laid by two (2) employees as a team.  When a sixth (6th) and seventh (7th) course of 12"x 8"x 16" masonry units are laid from the ground or off a four foot (4') scaffold, they may be put in place by two (2) employees working as a team.

J. MASONRY SAWS.   In order to protect the health and safety of employees against the ill effects of silicosis and other respiratory diseases, the dry cutting of masonry units by means of hand held, gas powered or electrical, portable "chop saws" and skill saws, and the grinding of masonry materials shall be prohibited on all masonry projects, effective April 1, 2003.

Employers engaged in wet cutting masonry products will be furnished elbow length gloves, an apron and goggles. No employee shall operate a wet saw unless provided with a wooden platform on which to stand and the saw is properly grounded. Only masonry saw blades rated as unbreakable should be used on sawing operations.

The only exception to this provision will be when the Union and the employer determine that water is not feasible. When the Union and the employer identify such tasks, the employer must ensure that the engineering and work practice controls are in place to control dust: such as a vacuum with high efficiency particulate air (HEPA) filter or another dust control system.

Respirators should only be used as the primary method of protection if other engineering and work practice controls are not feasible. When respirators are used, in accordance with OSHA regulations, employers must provide workers with full-face respirators as part of a complete respiratory protection program that includes the proper selection of respiratory cartridges, and training and fit testing to ensure that the worker is able to wear a respirator.

Additionally, in the event the Union and the employer determine that dry cutting or grinding is necessary, the contractor agrees to perform periodic air monitoring to ensure that silica exposure levels do not exceed the OSHA permissible exposure limit.

K. Jobs shall be prepared for masons so they can do their work without handicap.

L. Mortar stands will be not less than sixteen (16) inches high.

M. SCAFFOLDS.    Scaffold stage shall not be over six foot six inches (6'6") high and walls shall not be built over four foot eight inches (4'8") without adequate scaffolding.    Foot planks will be used only when topping out walls no more than six feet (6') above scaffold stage.    Outside scaffold shall be used on all corners where columns are in excess of six inches (6"). There shall be no time lost by employees while waiting for building of scaffolding or stocking of it during working hours.  The brickmason foreman shall supervise the erection of scaffolds.

N.  TOOLS OF THE TRADE.  Each employee shall be required to provide basic hand tools on the job to perform his duties. A list of the required hand tools for each craft is listed in "Appendix A "of this Agreement, any additional tools will be provided by the employer.

O. WALL HEIGHT.  No wall shall be built over five feet, four (5' 4") in height form the floor or scaffold. No foot plank shall be built higher than the wall, excluding fences.

P. MORTARBOARDS.  Mortarboards shall be blocked or set on stands at least sixteen (16") inches above scaffolds or floor. This provision shall not apply to stem walls.

Q. CHANGE OF CLOTHING.  Employees on refractory jobs necessitating a change of clothing due to the nature of the work shall be allowed fifteen (15) minutes to wash up, change clothing and clean tools.

## ARTICLE IX - GRIEVANCE PROCEDURES

A.      The parties to this Agreement shall establish a Joint Arbitration Board consisting of three representatives selected by the Employers and three representatives selected by the Local Union, to resolve disputes over the interpretation and application of this Agreement. The Board shall meet at least once a month, or on call, to settle complaints, abuses or grievances.  It is further agreed that should occasion require any alterations or amendments to this Agreement, the party desiring such alterations or amendments shall submit same in writing to the Board.  The Employer and Union representatives at a session shall have an equal number of votes on all matters coming before the Joint Arbitration Board, regardless of the number of Employer or Union representatives present at a session.

B.      It is specifically agreed that any controversy arising out of this Agreement involving the interpretation of its terms and conditions, shall be settled in accordance with the grievance procedure set forth in this Article.  No grievance shall be recognized unless it is called to the attention of the Employer by the Union or to the attention of the Union by the Employer within five (5) days after the alleged violation is committed or discovered.

C.      Grievances shall be handled in the following manner:

1.      The grievance shall be referred to the jobsite Union steward and to the jobsite employer's representative for adjustment.

2.      If the grievance cannot be settled pursuant to paragraph 1 of this Section, the grievance shall be referred on the following day to the officer primarily responsible for the day to day affairs of the Union or said officer's designee and the Employer.

3.      If the grievance cannot be settled pursuant to paragraph 2 of this Section within three (3) working days excluding weekends and holidays, the grievance shall be submitted within forty-eight (48) hours to the Joint Arbitration Board for consideration and settlement.

4.      If the Joint Arbitration Board cannot reach a satisfactory settlement within five (5) working days, not including weekends and holidays, following a referral of the grievance to the

NM 0502

Board, it shall immediately select an impartial arbitrator to review with the Board all evidence submitted relating to the dispute and then cast the deciding vote. If the Joint Arbitration Board cannot agree on an impartial arbitrator, the impartial arbitrator shall be selected from a panel of arbitrators submitted by and in accordance with the rules and regulations of the Federal Mediation and Conciliation Service. All expenses of the Impartial party shall be borne equally by the Employer and the Union. The decision reached by the Joint Arbitration Board with the assistance of the impartial arbitrator shall be final and binding upon all parties.

D.    When a settlement has been reached at any step of this Grievance Procedure, such a settlement shall be final and binding on all parties, provided, however, that in order to encourage the resolution of disputes and grievances at Steps 1 and 2 of Section C of this Article, the parties agree that such settlements shall not be precedent-setting.

E.    The time limits specified in any step of the Grievance Procedure may be extended by mutual agreement of the parties initiated by the written request of one party to the other, at the appropriate step of the Grievance Procedure. However, failure to process a grievance, or failure to respond within the time limits provided above, without a written request for an extension of time, shall be deemed a waiver of such grievance without prejudice, and shall create no precedent in the processing of and/or resolution of like or similar grievances or disputes.

## ARTICLE X- FRINGE BENEFITS

1.    A. In addition to wages and other payments provided for herein, the Contractor agrees to pay the contributions specified in the Appendix, to the following designated funds for the duration of this Agreement and for any renewals or extensions thereof.

A.    **Bricklayers and Trowel Trades International Pension Trust Fund**

(1)    The contribution to the Bricklayers and Trowel Trades International Pension Fund (IPF) shall be listed in "Article XVIII" for each hour or portion thereof, for which a covered employee receives pay.

(2)    The payments required above shall be made to the Bricklayers and Trowel Trades International Pension Fund, which was established under an Agreement and Declaration of Trust, dated 1 July 1972.

B.    **The Bricklayers and Trowel Trades International Retirement Savings Plan (BAC SAVE)**

(1)    The employer hereby agrees to participate in BAC SAVE - The Bricklayers and Trowel Trades International Retirement Savings Plan (the Plan) on behalf of all employees represented for purposes of collective bargaining under this Agreement and other employees as permitted under the Plan.

(2)    Effective April 1, 2003 the Employer will make or cause to be made pre-tax payroll deductions from participating employees' wages, in accordance with each employee's salary deferral election, subject to compliance with ERISA and the relevant tax code provisions. The Employer will forward the withheld sum to International Union Collection Service or its successors at such time, and in such form and manner as required pursuant to the Plan and Declaration of Trust and requirements of law. Each employee shall have the opportunity to change the amount of wages so deferred at intervals specified in the Plan and Declaration of Trust.

C.    **New Mexico & West Texas Health & Welfare Trust Fund**

(1)    The contribution to the New Mexico & West Texas Health & Welfare Trust Fund shall be listed in "Article XVIII" for each hour or portion thereof, for which a covered employee receives pay.

15

NM 0502

(2)    The payments required above shall be made to the New Mexico & West Texas Health & Welfare Trust Fund, which was established under an Agreement and Declaration of Trust, dated January 1, 1975.

D.    **New Mexico Bricklayers & Allied Craftworkers Joint Apprentice & Training Committee**

(1)    The contribution to the New Mexico Bricklayers & Allied Craftworkers Joint Apprenticeship & Training Committee shall be listed in "Article XVIII" for each hour or portion thereof, for which a covered employee receives pay.

(3)    The payments required above shall be made to the New Mexico Bricklayers & Allied Craftworkers Vacation Trust Fund, which was established under an Agreement and Declaration of Trust, dated November 1, 1978.

E.    **Build New Mexico**

(1)    The contribution to the Build New Mexico shall be listed in "Article XVIII" for each hour or portion thereof, for which a covered employee receives pay.

(2)    This program is supported by an equal per hour contribution from the Contractor and an equal per hour deduction from the employee's wages. The contributions and deductions are based on hours worked.

(3)    The payments required above shall be made to Build New Mexico, which was established under an Agreement and Declaration of Trust, dated November 1, 1988.

F.    **International Masonry Institute (IMI)**

(1)    The masonry industry in the United States and Canada has great and definable needs in the fields of apprenticeship and training, advertising and promotion, research and development, and labor/management relations which must be met if the industry is to grow and prosper. The parties to this agreement believe that the International Masonry Institute is the most effective and efficient instrument for meeting these needs because it offers the greatest possibility of integrating activities in these program areas in an effective manner and coordinating them through a single regional/international system.

(a)    Effective April 1, 2003, the contribution to the International Masonry Institute shall be listed in "Article XVIII" total hourly wage and benefits package rate for each hour, or portion thereof, for which a covered employee receives pay.

(b)    Effective April 1, 2004, the contribution to the International Masonry Institute shall be listed in "Article XVIII" of the total hourly wage and benefits package rate for each hour, or portion thereof, for which a covered employee receives pay.

(c)    Effective April 1, 2005, the contribution to the International Masonry Institute shall be listed in "Article XVIII" of the total hourly wage and benefits package rate for each hour, or portion thereof, for which a covered employee receives pay.

The payments required above shall be made to the International Masonry Institute, which was established under an Agreement and Declaration of Trust, 14 March 1981, as the successor trust to the predecessor International Masonry Institute (established under an Agreement and Declaration of Trust, 22 July 1970) and/or to the predecessor International Masonry Apprenticeship Trust (established under an Agreement and Declaration of Trust, 6 November 1974).

Section 2.    The Employer hereby agrees to be bound by and to the above stated Agreements and Declarations of Trusts, as though the employer had actually signed the individual documents and further agrees to be bound by all actions taken by the Trustees of these funds pursuant to said Agreements and Declarations of Trusts.

16

NM 0502

<u>Section 3.</u>    The Employer hereby irrevocably designates as its representative on the above stated Boards of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

<u>Section 4.</u>    For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and all other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable to each fund designated in Section 1 of this Article.

<u>Section 5.</u>    Contributions shall be paid on behalf of all covered employees starting with the employee's first day of employment in a job classification covered by this Agreement.   This includes, but is not limited to, journeypersons, apprentices, helpers, trainees and probationary employees.

<u>Section 6.</u>    All contributions shall be made at such time and in such a manner as the Trustees require; and the Trustees shall have the authority to have an Independent Certified Public Accountant audit the time books, payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the funds designated in Section 1 of this Article.  Any Employer found, as a result of an audit ordered by the Trustees of one of the fringe benefit funds, to have been substantially inaccurate in reporting shall be charged in full costs of such audit.

<u>Section 7.</u>    If the Employer fails to make any contribution specified in this Article, within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary, including the withdrawal of manpower, to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collection of payments due together with attorney's fees and such liquidated damages as may be assessed by the Trustees.  The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided for or set forth elsewhere in this Agreement.


2.    DUES CHECK-OFF PROVISION.  The Employer shall deduct from the wages of each employee who has signed a check-off authorization conforming to federal law and transmit monthly to the Union (or to any agency designated by said Union for the collection of such money), the sum for each hour paid which the Union has specified, or specifies from time to time and so advises the Employer in writing, as the portion of each employee's Union dues to said Union, to its International Union, or to any other affiliate of the International Union, subject to check-off.  The sums transmitted shall be accompanied by a statement, in a form specified by the Union, reporting the name of each person whose dues are being paid and the number of hours each employee has been paid.

3.    BAC-PAC PROVISION.  The Employer agrees to deduct an amount from the pay of each employee, who is a union member and who executes a voluntary check-off authorization form for the Bricklayers and Allied Craftworkers Political Action Committee (BACPAC).  Deductions shall be in the amount and at the intervals specified on the check-off authorization form.  The Employer agrees to transmit BACPAC deductions to the Treasurer of BACPAC, and shall be accompanied by a list of the names of those employees for whom BACPAC deductions have been made and the amount deducted for each employee.

4.    BAC-SAVE FUND The Contractor hereby agrees to participate in BAC SAVE – The Bricklayers and Trowel Trades International Retirement Savings Plan (the Plan) on behalf of all employees represented for purposes of collection bargaining under this Agreement and other employees as permitted under the Plan.

Effective 07/01/2000, the contractor will make or cause to be made pre-tax payroll deductions from participating employees' wages, in accordance with each employee's salary deferral election, subject to compliance with ERISA and the relevant tax code provisions.  The Contractor will forward the withheld sum to the international Union Collection Service or its successor at such time, and in such form and manner as required pursuant to the Plan and Declaration of Trust and the requirements of law.  Each employee shall have the opportunity to change the amount of wages so deferred at intervals specified in the Plan and Declaration of Trust.

The International Union Collection Service must receive all 401(k)-contribution payments made on behalf of any employee, no later than the fifteenth (15th) day of the following month.

5.    The Contractor shall be held harmless for any deduction made in good faith after having received the above authorizations.

17

6.      The No-Strike provisions of Article XI shall not apply so long as the Contractor fails or neglects to make timely contributions to the respective Funds, or submit dues or initiation fees in accordance with Paragraph 9 above.

7.      NOTIFICATION OF DELINQUENCIES.   The Trustees of the Funds set forth in Section 2, 3, 4, 5 and 6 of this Article VIII, shall cause the Administrator to mail out to each participating party, on the first of each month, a list containing the name of each Contractor who has been classified as delinquent or late in accordance with the rules and cutoff dates established by the Trustees.

## ARTICLE XI - NO STRIKE - NO LOCKOUT

1.      NO STRIKE.  The Union agrees that for the duration of this Agreement there shall be no strike, work stoppage, or slow down authorized, sanctioned or encouraged by the Union, and no picket lines shall be established by the Union, except as set forth in Section 3 below.  The Union representing any workmen on strike shall use all means within its power to end the work stoppage at the earliest possible time.

2.      NO LOCKOUT.  The Contractor agrees that there will be no lockout of employees for the duration of the Agreement except as provided in Article IX Section C; (4), and Section 3 of this Article XI.

3.      If there is a strike, work stoppage or slow down by any Union or Unions, whether or not party hereto, against any multi-Contractor bargaining unit or group, whether or not organized into an Contractor association, over the term of a new, renewed or properly reopened collective bargaining agreement involving construction work, it shall be deemed a violation of this Article XI for the duration of such strike, stoppage or slow down: a) for the Contractor to cease work or to lockout its or their employees; or b) for any Union to strike.  The Union and Contractor shall give the other at least 48 hours prior written notice of such action.

## ARTICLE XII - APPRENTICESHIP

In order to train sufficient skilled mechanics for the industry, the necessity for employment of apprentices and/or improver apprentices is recognized and encouraged by the parties to this Agreement.  It is agreed that the apprenticeship standards adopted by the local Joint Apprenticeship and Training Committee are incorporated herein by reference as if fully set out.  The local Joint Apprenticeship Committee is empowered to adopt rules and regulations and to determine ratios of apprentices to journeymen.  Advancement of an apprentice to the next higher pay classification shall be selected and certified by the Joint Apprenticeship Committee, and the apprentice shall be indentured to the apprenticeship committee. If the Joint Apprenticeship and Training Committee has not adopted local standards, then the National Apprenticeship Standards shall be incorporated herein by reference as if fully set out.

## ARTICLE XIII - HOURLY RATES, INSURANCE, PAYROLL DEDUCTIONS

1.      HOURLY RATES.  The hourly wage rates and clarifications listed in the Appendix shall apply on all work performed under the terms of this Agreement within the jurisdiction of the Union.

2.      INSURANCE.  The Contractor shall carry Workmen's Compensation Insurance on all employees covered by this Agreement.

3.      PAYROLL DEDUCTIONS.  The Contractor shall give to each employee with each check a statement itemizing the employee's gross amount earned, hours worked, Social Security Tax, Withholding Taxes and all other deductions.

18

NM 0502

## ARTICLE XIV- GENERAL

1.    ENTIRE AGREEMENT.  This Agreement contains all of the covenants, stipulations and provision agreed upon by the parties hereto and no agent or representative of either party has authority to make, and none of the parties shall be bound by or liable for, any statement, representation, promise, inducement, or agreement not set forth herein.  This Agreement may not be changed, amended or modified except by writing signed by the Union and Association.

2.    CONFLICT.  In the event of a conflict between the provisions in the body of this Agreement and Appendix, the provisions in the Appendix shall govern.

3.    HEADINGS.  Headings have been inserted for convenience only, and shall not be considered in the interpretation of any provision hereof.

4.    All notices given or required to be given shall be in writing and delivered personally, mailed certified, return receipt requested, FAX or by telegram, and shall be deemed to have given on the date of delivery, mailing or wiring as the case may be.

## ARTICLE XV- ADDITIONAL UNIONS

ADDITIONAL UNIONS.  Any BAC Bricklayer Local Union chartered to operate within New Mexico after execution of this Agreement may become signatory to this Agreement and shall be bound by it, only by written agreement between the signatory Unions and Association.

## ARTICLE XVI - PRESERVATION OF WORK

A.    In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any work of the type covered by this Agreement at the site of a construction project, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work.

B.    All charges of violations of Section A of this Article shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in Article IX of this Agreement.  As a remedy for violations of this Section, the arbitrator (or arbitration body) provided for in Article IX is empowered, at the request of the Union, to require an Employer to (1) pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as result of the violations, and (2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations, including such interest as may be prescribed by the trustees or by law.  Provision for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this Section; nor does it make the same or other remedies unavailable to the Union for violations of other sections or articles of this Agreement.

C.    If, as a result of violation of this Article, it is necessary for the Union and/or the trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with Section B above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or the fund trustees, plus costs of the litigation, which have resulted from the bringing of such court action.

## ARTICLE XVII - SEPARABILITY AND SAVINGS PROVISION

It is the intent of the parties hereto to abide by all applicable Federal and State statutes and rules and regulations made pursuant thereto. If any provision of this Agreement is held invalid by any court or governmental agency having jurisdiction, or if compliance with or enforcement of any provision of this Agreement is restrained by such tribunal pending a final determination as to its validity, then such provision or provisions shall continue in effect only to the extent permitted and all other provisions of this Agreement shall remain in force and effect.

In the event that any provision of this Agreement is held invalid, or enforcement of or compliance with any provision is restrained, the Union and the Employer shall enter into immediate collective bargaining negotiations for the purpose of arriving at a mutually satisfactory replacement, incorporating the substance of such provision to the extent allowable under the law, to be in effect during the period of invalidity or restraint.

## STATEMENT OF POLICY AND PRINCIPALS

**The Contractor agrees that:** The Contractor will endeavor to use the same working force employed pursuant to the terms of this Agreement insofar as their work requires. Such working force shall largely be recruited in the localities where the work is performed.

**The Union agrees to:** The following principals which are a statement of policy announced by the Building and Construction Trades Department, AFL-CIO.

1.    The selection of foreman or general foreman, shall be entirely the responsibility of the Contractor. Bricklayers employed on a project shall receive orders from foreman only.

2.    Welding equipment is a tool of the trade having jurisdiction over work being welded.

3.    On all jobs where it is necessary to have a certified welder, the Contractor, provided the employee passes the test will pay for the cost of the welding certification test.

4.    Employees shall be at their regular place of work at the starting time and shall remain at their place of work until the regular quitting time. Five (5) minutes clean up time before lunch and quitting time will be allowed. On refractory and acid brickwork an additional ten- (10) minutes will be allowed for clean up time and end of shift.

5.    There shall be no limit on production of neither employees nor restriction on full use of proper tools or equipment and there shall not be any task or piecework.

6.    Payment of excessive daily travel allowances or subsistence will be discouraged.

7.    When employees are required to work where acid brick or refractory work tend to destroy tools or working clothing, the Contractor shall replace or furnish tools or clothing, except when said destruction results from workmen's negligence.

8.    Bricklayers shall not be required to haul Contractor's equipment in their personal vehicles.

9.    Slow Downs, forcing of overtime, spread-work tactics, standby crews and featherbedding practices have been and are condemned.

10.    Stewards shall be qualified workmen. There shall be no non-working stewards.

11.    The steward shall call time on the job (such as start or stop) at any time the foreman of the job is absent or in no position to do so.

12.    Placing of fill in masonry shall be under the supervision of a bricklayer.

NM 0502

## ARTICLE XVIII – WAGES (COMMERCIAL)

**Section A.**    The hourly wage rates for all employees performing all Brick, Block, Stone, PCC, & Marble work covered under this Agreement shall be as follows:

1st    YEAR    4/1/2005    A∅

- Basic hourly wage rate Journeyman.................................................................................$ 20.80
- Basic hourly wage rate Saw Man...................................................................................$ 21.30
- Basic hourly wage rate Sub-Foreman.............................................................................$ 21.55
- Basic hourly wage rate Foreman....................................................................................$ 23.80
- Basic hourly wage rate Marble Finisher..........................................................................$ 14.20
- Dues Check Off ...........................................................................................3% of Gross Wages
- BAC-PAC...........................................................................................................................$   .01
- Bricklayers Trowel Trades International Pension Fund......................................................$  2.65
- New Mexico & West Texas Multi Craft Health & Welfare.................................................$  2.45

6-1-05

- International Masonry Institute........................................................................................$   .54
- New Mexico JATC............................................................................................................$   .10
- Build New Mexico............................................................................................................$   .02

Apprentice by Period:
[1st ($10.40)] [2nd ($11.44)] [3rd ($12.48)] [4th ($13.52)] [5th ($14.56)] [6th ($15.60)] [7th ($16.64)][8th ($17.68)]

**BUILD NEW MEXICO:** This program is supported by a two-cent ($.02) per hour contribution from the Contractor and a two-cent ($.02) per hour deduction from the employee's wages. The contributions and deductions are based on hours worked.

2nd    YEAR    4/1/2006

- Basic hourly wage rate Journeyman.................................................................................$ 21.80
- Basic hourly wage rate Saw Man...................................................................................$ 22.30
- Basic hourly wage rate Sub-Foreman.............................................................................$ 22.55
- Basic hourly wage rate Foreman....................................................................................$ 24.80
- Basic hourly wage rate Marble Finisher..........................................................................$ 14.20
- Dues Check Off ...........................................................................................3% of Gross Wages
- BAC-PAC...........................................................................................................................$   .01
- Bricklayers Trowel Trades International Pension Fund......................................................$  2.65
- New Mexico & West Texas Multi Craft Health & Welfare.................................................$  2.45
- International Masonry Institute........................................................................................$   .54
- New Mexico JATC............................................................................................................$   .10
- Build New Mexico............................................................................................................$   .02

Apprentice by Period:
[1st ($10.90)] [2nd ($11.99)] [3rd ($13.08)] [4th ($14.17)] [5th ($15.26)] [6th ($16.35)] [7th ($17.44)][8th ($18.53)]

**BUILD NEW MEXICO:** This program is supported by a two-cent ($.02) per hour contribution from the Contractor and a two-cent ($.02) per hour deduction from the employee's wages. The contributions and deductions are based on hours worked.

2nd Year    6-1-06

Basic Hourly wage rate Journeyman--------------------------------------------------------$ 21.25

Basic Hourly wage rate Saw Man----------------------------------------------------------$ 21.75

Basic Hourly wage rate Sub-Forman------------------------------------------------------$ 22.00

Basic Hourly wage rate Forman----------------------------------------------------------$ 24.25

Basic Hourly wage rate Marble Finisher--------------------------------------------------$ 14.20

Dues Check-off------------------------------------------------------------3% of gross wages

BAC-PAC-----------------------------------------------------------------------$    .01

Bricklayers Trowel Trades International Pension Fund----------------------------------$  2.65

New Mexico & West Texas Multi Craft Health & Welfare---------------------------------$  3.00

International Masonry Institute-----------------------------------------------------$    .54

New Mexico JATC------------------------------------------------------------------$    .10

Build New Mexico-----------------------------------------------------------------$    .02


Apprentice by Period
1st ($10.63) 2nd ($11.69) 3rd ($12.75) 4th($13.82) 5th ($14.88) 6th ($15.94) 7th ($17.00) 8th ($18.07)

**BUILD NEW MEXICO:** This program is supported by a two-cent ($.02) per hour contribution from the Contractor and a two-cent ($.02) per hour deduction from the employees wages. The contributions and deductions are based on hours worked

**Section B.**    If during the course of this agreement any additional contribution levels in any of the fringe benefits provided herein are needed, the money shall be diverted from the wage into the funds to meet those needs.

**Section C.**    The hourly wage rates for all employees performing all Tile, Terrazzo, Cement, Plaster & Mosaic, work covered under this Agreement shall be as follows:

|  | 1st YEAR 4/1/2005 |
|---|---|
| • Basic hourly wage rate Journeyman................................................................$ 17.35 | |
| • Basic hourly wage rate Finisher 1.................................................................$ 14.20 | |
| • Basic hourly wage rate Finisher 2.................................................................$ 13.60 | |
| • Basic hourly wage rate Foreman..................................................................$ 20.35 | |
| • Dues Check Off ................................................................3% of Gross Wages | |
| • BAC-PAC.............................................................................$    .01 | |
| • Bricklayers Trowel Trades International Pension Fund.........................................$  2.65 | |
| New Mexico & West Texas Multi Craft Health & Welfare.......................................$  2.45 | |
|  | 6-1-05 |
| • International Masonry Institute......................................................................$    .54 | |
| • New Mexico JATC..................................................................................$    .00 | |
| • Build New Mexico...................................................................................$    .02 | |

22

Apprentice by Period:
[1st ($ 8.67)] [2nd ($ 9.54)] [3rd ($10.41)] [4th ($11.27)] [5th ($12.15)] [6th ($13.01)] [7th ($13.88)] [8th ($14.75)]

**BUILD NEW MEXICO**: This program is supported by a two-cent ($.02) per hour contribution from the Contractor and a two-cent ($.02) per hour deduction from the employee's wages. The contributions and deductions are based on hours worked.

|  |  | 2nd | YEAR 4/1/2006 |
|---|---|---|---|

- Basic hourly wage rate Journeyman.................................................................$ 17.35
- Basic hourly wage rate Finisher 1..................................................................$ 14.20
- Basic hourly wage rate Finisher 2..................................................................$ 13.60
- Basic hourly wage rate Foreman....................................................................$ 20.35
- Dues Check Off ..................................................................................3% of Gross Wages
- BAC-PAC.............................................................................................$   .01
- Bricklayers Trowel Trades International Pension Fund.......................................$  2.65
- New Mexico & West Texas Multi Craft Health & Welfare....................................$  3.00
- International Masonry Institute.......................................................................$   .54
- New Mexico JATC........................................................................................$   .10
- Build New Mexico.......................................................................................$   .02

Apprentice by Period:
[1st ($ 8.67)] [2nd ($ 9.54)] [3rd ($10.41)] [4th ($11.27)] [5th ($12.15)] [6th ($13.01)] [7th ($13.88)][8th ($14.75)]

**BUILD NEW MEXICO**: This program is supported by a two-cent ($.02) per hour contribution from the Contractor and a two-cent ($.02) per hour deduction from the employee's wages. The contributions and deductions are based on hours worked.

__Section D.__    The Union shall have the option of allocating a portion or all of the increases in wage rates for the periods beginning April 1, 2005 among the various benefit funds specified in Article X.

__Section E.__    The hourly wage rates for all employees performing all Heavy Engineering Refractory work covered under this Agreement shall be as follows:    A6

|  |  | 1st | YEAR 4/1/2005 |
|---|---|---|---|

- Basic hourly wage rate Journeyman.................................................................$ 21.05
- Basic hourly wage rate Foreman....................................................................$ 24.05
- Dues Check Off ..................................................................................3% of Gross Wages
- BAC-PAC.............................................................................................$   .01
- Bricklayers Trowel Trades International Pension Fund.......................................$  2.65
- New Mexico & West Texas Multi Craft Health & Welfare....................................$  2.45

6-1-05

- International Masonry Institute.......................................................................$   .54
- New Mexico Masonry Institute......................................................................$   .00
- Build New Mexico.......................................................................................$   .02

Apprentice by Period:
[1st ($10.53)] [2nd ($11.58)] [3rd ($12.63)] [4th ($13.68)] [5th ($14.74)] [6th ($15.79)] [7th ($16.84)][8th ($17.90)]

**BUILD NEW MEXICO**: This program is supported by a two-cent ($.02) per hour contribution from the Contractor and a two-cent ($.02) per hour deduction from the employee's wages. The contributions and deductions are based on hours worked.

23

2nd YEAR 4/1/2006

- Basic hourly wage rate Journeyman.................................................................$  22.05
  - Basic hourly wage rate Foreman...............................................................$25.05
- Dues Check Off ...........................................................................................3% of Gross Wages
- BAC-PAC.....................................................................................................$    .01
- Bricklayers Trowel Trades International Pension Fund.............................................$  2.65
- New Mexico & West Texas Multi Craft Health & Welfare.........................................$  3.00
- International Masonry Institute.......................................................................$    .54
- BAC/ JATC..................................................................................................$    .10
- Build New Mexico.........................................................................................$    .02

Apprentice by Period:
[1st ($11.03)]  [2nd ($12.13)]  [3rd ($13.23)]  [4th ($14.34)] [5th ($15.43)] [6th ($16.54)] [7th ($17.64)][8th ($18.75)]

**BUILD NEW MEXICO:** This program is supported by a two-cent ($.02) per hour contribution from the Contractor and a two-cent ($.02) per hour deduction from the employee's wages. The contributions and deductions are based on hours worked.

**Section F.**     The Union shall have the option of allocating a portion or all of the increases in wage rates for the periods beginning April 1, 2005 among the various benefit funds specified in Article X.

**Section G.**     For the sole purpose of negotiating adjustments in the hourly wage rates as set forth in Section A of this provision, either party may reopen this Agreement for negotiations by giving written "Notice of Wage Reopening" to the other party not later than thirty (30) days prior to April 1,2005. The parties will meet as promptly as possible in an endeavor to reach agreement. If no agreement is reached as of April 1,2005, either party shall have the right to resort to economic recourse, notwithstanding the provisions of Article XI. It is understood and agreed that failure to reach agreement shall not give either party the right to terminate or alter this Agreement, and that the wage rates specified in Section A above shall remain in effect unless agreement is reached. Not withstanding any re-opener of this agreement Article XI shall remain in effect and may not be re-opened until April 2005, unless the parties agree in writing signed by both parties to re-open it. There shall be no strikes or lockouts within 60 days of any re-opening of this agreement, if the parties agree to allow Article XI to become a part of any re-opening.

1.     **HIGH PAY:** Workmen employed on forty (40) or more feet above the ground or above a solid floor, deck or flat roof shall receive premium pay as follows:

|  |  |
|---|---|
| 40 to 80 feet | $ .25 per hour |
| 80 to 120 feet | .50 per hour |
| 120 to 160 feet | .75 per hour |
| Above 160 feet | 1.00 per hour |

For the purpose above, a roof having a slope not greater than two (2) inches in twelve (12) shall be considered a flat roof.

2.     **SUBSISTENCE:** The Contractor will be required to pay subsistence to all employees that he may hire either directly or by request from the local Union that will be sent to a project located outside of the city. For Albuquerque area contractors the starting point shall be the Big I intersection of I-40 and I-25 and shall continue to the jobsite. All other signatory contractors shall start from the city and county of the employers main office address where the payment of subsistence allowance is required by this agreement.

A. ALL WORK OVER FIFTY (50) road miles and INCLUDING SEVENTY-FIVE (75) road miles, to include the municipal limits of the city where the work is being performed, shall be paid hourly wage rate plus $20.00 per day subsistence. Subsistence is to be paid by separate check.

24

B.  ALL WORK OVER SEVENTY-FIVE (75) road miles, to include the municipal limits of the city where the work is being performed, shall be paid hourly wage rate plus $50.00 per day subsistence. Subsistence is to be paid by separate check.

**The Saw Man when employed consecutively for one hour or more shall be paid at the above stated wage rate for actual time worked.

**Journeyman Wages - Includes $.01 per hour BACPAC deduction, 3% of Gross Wages dues check-off deduction and $.02 per hour Build New Mexico deduction.

## ARTICLE XIX - BONDING

Prior to commencing any work covered by this Agreement, the Employer shall obtain a bond in the amount of Five Thousand Dollars (5000) with a duly qualified bonding company in a form approved by the Union, to secure payment of wages, benefit contributions, and other sums due under this agreement.

## APPENDIX A - TOOLS OF THE TRADE

Journeyman & Apprentices will be required to supply the following tools. The contractor shall purchase all other specialty tools.

**BRICK & BLOCK**
Levels 4' & 2'
Trowel 12" or better
Margin Trowel
Tuck Pointer
Jointers
Brick Hammer
Brick Set
Brush
Measuring Tape
Brick Rule
Line Fasteners
Dura-wall Cutters
½" Mason Chisels
3" Mason Chisels
Chalk box
Pencils, markers, sharpeners

**STONE**
Levels 4' & 2'
Trowel 12" or better
Margin Trowel
Tuck Pointer
Jointers
Brick Hammer
Mashing Hammer
Bush Hammer
Brush
Hand set & off set Hand set
Hand Tracer
Hand Point
Hand Chisel
Measuring Tape
Chalk box
Pencils, markers, sharpeners

**TILE**
Regular Cutting Board
Framing Square
Side Biters & Large Biters
Rubber Mallet & Beating Block
Levels 4' & 2'
Chalk Box
Claw Hammer
12' Steel Tape
¼" and ½ " Chisel (tipped)
Flat Trowel
Wood Float
¼" notched trowel
3/8" or ½" notched trowel
3/16" V-notched trowel
Gauging, margin or pointing trowel
Wire cutters (tin snips)
Staple gun or hammer
Hawk
Rubbing Stone
Pencils, markers, sharpeners

**CEMENT**
Utility Brush
6X 2 ½ Stainless Edger
Stainless Edger 6X4
16" Magnesium Float
Mahogany Wood Float
9X4 Rubber Float
6X3 Stainless Steel Groover
Brick Hammer
End cut Nippers
12X 4 Trowel
14X4 Trowel
5X2 Margin Trowel

25

**MARBLE**
Levels 4' & 2'
Squares 2'
2lb Striking Hammer
White Rubber mallet
Chalk Line
C-clamps 6-2" clamps
Measuring Tape and or rulers (standard or metric according to the job)
Pencils, markers, sharpeners
2 margin trowels
Plaster Paddle-for mixing and applying plaster
Chisels ½ " & 3/8"
Points ½ " & 3/8"
Sponge
2 small flat pry bars
lineman's pliers 9"

*Exterior Cladding*

Levels 4' & 2'
Squares 2'& 8"
Pry bars (Wonder bar & Heavy pry bar)
3lb Striking Hammer
#3 & # 4 rawhide hammer
Tork wrench
Ratchets ½ "or 3/8" drive
Extensions
Sockets
Adjustable wrench
Combination wrenches
Lineman's Pliers 9'
Measuring Tape and or rulers (standard or metric according to job)
Trowel
Slickers and or Tuck Pointing Tools
C-clamps 6-3" (adjustable)
Bar clamp 4-12" inch (adjustable)
Pencils Markers & sharpener
Brush
Chisels
Points
Braided Nylon line
Line blocks, Line pins
Chalk-line

**PLASTER**
4' Browning Rod
8" Dutch Brush
Utility Brush
Edger
Angle Float
Rubber Float
Groovers
Hatchet Lath
Hawk 13 X13
Angle plane
Plasterers sponge
Angle Plow
8" Scarfier
42" Slicker
12' Tape
5X2 Margin Trowel
Stainless Steel Trowel 11" X 4 ¾

**NM 0502**

**SIGNATURE PAGE**

This Amended Agreement is approved and entered into this 1st day of April 1, 2005, by:

CONTRACTOR NAME

AND

THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, LOCAL UNION No. 3
STATE OF NEW MEXICO

CONTRACTOR:                                              FOR THE UNION:

                                                        BRICKLAYERS & ALLIED CRAFTWORKERS
CONTRACTOR NAME                                         LOCAL # 03

_____                        _____
Owner -Title                                           Steven M. Chestnut – President/ Sec-Treasurer
                                                       Local #3 AZNMTX

_____                        _____
Date                                                   Date

27

BRICKMEN STRUCTURES INC
410290 0002 NM 1

SIGNATURE |

This Amended Agreement is approved and entered into this 1st day of Jan. 1, 2005, by:

CONTRACTOR NAME
Brickmen Structures Inc
AND

THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, LOCAL UNION No. 3
STATE OF NEW MEXICO

CONTRACTOR:                                    FOR THE UNION:

                                               BRICKLAYERS & ALLIED CRAFTWORKERS
                                               LOCAL #03
CONTRACTOR NAME

_____               _____
Owner -Title    President                      Steve Chestnut – President/ Secretary/ Treasurer

_____               _____
Date            4/15/2005                      Date    4-16-05

26

NM 0502



Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN FLYNN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1623 (RMC) |
| | ) | |
| BRICKMEN STRUCTURES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## JUDGMENT

The Summons and Complaint in this action having been duly served on the above-named Defendant on September 26, 2007, and the time for said Defendant to appear and defend herein having expired, and Defendant not having filed an Answer, and the Clerk having entered default, and the Plaintiffs having filed a declaration of a total amount due of $47,702.54, and Plaintiffs having moved for entry of judgment by default in that amount, it is hereby

ORDERED, ADJUDGED, AND DECREED that the final judgment in favor of Plaintiffs and against Defendant is hereby granted and ordered entered as the judgment in this action as follows:

1. That Plaintiffs John Flynn, James Boland, Gerry O'Malley, Ken Lambert, Gerard Scarano. H. J. Bramlett, Eugene George, Paul Songer, William McConnell, Matthew Aquiline, Gregory R. Hess, Michae+--l Schmerbeck, Vincent Delazzero, and Benjamin Capp, all of whom are Trustees of, and sue on behalf of, the Bricklayers & Trowel Trades International Pension Fund ("IPF"), 620 F Street N.W., 7th Floor, Washington, DC 20004, and Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent

Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phillips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, all of whom are Trustees of, and sue on behalf of, the International Masonry Institute ("IMI") recover from Defendant, Brickmen Structures, Inc., 7819 Grayson Road N.W., Albuquerque, NM 87120, the amount due of $47,702.54;

2.     That Brickmen Structures, Inc. be directed to submit all monthly reports and contributions that may come due the Plaintiffs subsequent to the filing of this judgment;

3.     That Brickmen Structures, Inc., comply with its obligations to make timely and full contributions to the IPF; and

4.     That said judgment is without prejudice to the right of Plaintiffs to seek recovery of any past or future delinquencies, interest, damages and reasonable attorney's fees and costs that may be owing to the Plaintiffs from Brickmen Structures, Inc.

ORDERED, ADJUDGED AND DECREED that Plaintiffs have execution therefor.

Dated: _____, 2007          _____
                                           Rosemary M. Collyer
                                           United States District Judge

2354371.01

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHN FLYNN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 07-1623 (RMC) |
| ) | |
| BRICKMEN STRUCTURES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## <u>LOCAL RULE 7(K) STATEMENT</u>

Pursuant to Local Rule 7(k), the following persons are entitled to be served with orders, judgments and stipulations:

> Ira R. Mitzner, Esq.
> Dickstein Shapiro LLP
> 1825 Eye Street, N.W.
> Washington, DC  20006-5403
> Telephone: (202) 340-2200
> Facsimile   (202) 420-2201
>
> Brickmen Structures, Inc.
> 1615 1/2 University Boulevard N.E.
> Alburquerque, NM  87106

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion for Entry of Default Judgment, with the Declaration of David F. Stupar, Declaration of Ira R. Mitzner, proposed Judgment, and Local Rule 7(k) Statement, was served by first-class mail, postage prepaid, on the 28th day of November 2007 upon:

Brickmen Structures, Inc.
1615 1/2 University Boulevard N.E.
Alburquerque, NM 87106

Joanne Jackson